**Melvin Clifford NEESE, Appellant,**

v.

**Dorothy Albina June NEESE, Appellee.**

**No. 11–83–267–CV.**

Court of Appeals of Texas, Eastland.

March 22, 1984.

Rehearing Denied April 12, 1984.

Beverly Tarpley, Scarborough, Black, Tarpley & Scarborough, Abilene, for appellant.

Dick R. Crownover, Wilson, Newman, Crownover & Wilson, Abilene, for appellee.

1. *McCarty* was decided on June 26, 1981. It held that nondisability military retirement benefits were not divisible as community property by state courts.

2. Under the Act, a state court may treat military retirement pay as separate property of the retired spouse or as community property "in accordance with the law of the jurisdiction of such court." The Act limits such division of retirement pay to periods beginning after June

McCLOUD, Chief Justice.

Dorothy Neese sued her former husband, Melvin Neese, seeking to enforce a divorce decree awarding her a 43.5 percent interest in defendant's nondisability military retirement benefits.

The parties were divorced on June 24, 1976. At that time, defendant was retired from the United States Air Force and he was receiving military retirement pay in the gross amount of $461.94 per month. The divorce decree awarded the wife a "43.5 percent interest in the gross amount of all U.S. Air Force Retirement Benefits." Defendant made monthly benefit payments to the plaintiff until July 1981. He stopped making the payments at that time because of his interpretation of the decision by the United States Supreme Court in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).[1] Defendant resumed making monthly payments to plaintiff in January 1983 following the enactment of the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. sec. 1408 (1983).[2]

Plaintiff sought recovery of 43.5 percent of the retirement benefits received by defendant during the 18 month period between July 1981, when payments were stopped, and January 1983, when payments were resumed. The trial court awarded plaintiff a judgment for $4,968.82 in past benefits, 43.5 percent of the gross amount of all future benefits less "federal employment and income taxes,"[3] and attorney's fees. By July 1981, defendant's gross retirement pay had increased to $718.00 per month. In calculating the $4,968.82 judgment, the trial court included increases in defendant's gross retirement pay.

25, 1981. See 10 U.S.C. sec. 1408(c)(1). The purpose of the Act was to reverse the effect of *McCarty*. *Cameron v. Cameron*, 641 S.W.2d 210 (Tex.1982).

3. The trial court deducted "federal employment and income taxes" from defendant's gross monthly payments pursuant to Section 1408(a)(4). See 10 U.S.C. sec. 1408(a)(4). Plaintiff does not challenge these deductions.

Defendant argues that his former wife is not entitled to share in the post-divorce increases in his retirement pay. We disagree.

Defendant recognizes that *McCarty* has no retroactive effect in Texas. See *Segrest v. Segrest*, 649 S.W.2d 610 (Tex.1983); *Ex Parte Welch*, 633 S.W.2d 691 (Tex.App.— Eastland 1982) (original proceeding). He urges that Section 1408(c)(1) [4] of the Uniformed Services Former Spouses' Protection Act required the trial court to treat the "disposable retired pay" payable after June 25, 1981, "in accordance with the law" of Texas. Defendant contends that under Texas law his former wife cannot share in the retirement benefit increases because the value of the community interest in the retirement benefits was forever fixed at $461.94 per month at the time of their divorce in accordance with *Berry v. Berry*, 647 S.W.2d 945 (Tex.1983).

■ We will assume, without deciding, that Section 1408(c)(1) is applicable to the present case. We note that the apparent purpose of the "June 25, 1981" date in Section 1408(c)(1) is to place the courts in the same position that they were in on June 26, 1981, when *McCarty* was decided. See S.Rep. No. 97–502, 97th Cong. 2d Sess. 1, 16, reprinted in, 1982 U.S.Code Cong. and Ad.News 1555, 1596, 1611.

■ *Berry* does not control our disposition. In the instant case, the defendant was retired and receiving retirement benefits from the military when the parties were divorced on June 24, 1976. The retirement benefits had matured and were divided by the trial court in the divorce decree. *Berry* was a post-divorce suit to partition retirement benefits which had not matured at the time of divorce, and were not divided in the divorce decree. The Supreme Court noted that Mr. Berry had continued to work for 12 years after the divorce and that the improved retirement pay resulted from his post-divorce employment.

Relying on *Cameron v. Cameron*, 641 S.W.2d 210 (Tex.1982), *Berry* held that the post-divorce increases could not be awarded to Mrs. Berry because to do so would invade Mr. Berry's separate property. The increases in the instant defendant's monthly retirement pay do not constitute his separate property. Our Supreme Court observed in *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976) that a "serviceman's military pension ... is a form of deferred compensation which is earned during each month of his military service." We also note that in *Cameron*, our Supreme Court approved an award to the wife for 35 percent of the gross present and "future" military retirement benefits paid to the husband. It appears that *Cameron* recognizes that, under facts similar to the instant case, post-divorce increases in future payments do not constitute separate property of the retired spouse. Both parties will share in the future "increases" and "decreases" in retirement benefits. We overrule defendant's first point of error. Defendant's former wife is entitled to share in the increased retirement benefits.

■ Defendant alternatively urges that the trial court erred in awarding a judgment based on "gross retirement pay" rather than "disposable retirement pay." He specifically asserts that he is entitled to a deduction from his gross retirement pay for payments to his Survivor Benefit Plan before plaintiff is entitled to 43.5 percent of his retirement pay. Again, we will assume, without deciding, that 10 U.S.C. sec. 1408(a)(4) (1983) is applicable.

Section 1408(a)(4) provides in pertinent part:

"Disposable retired or retainer pay" means the total monthly retired or retainer pay to which a member is entitled ... less amounts which—

\*　　\*　　\*　　\*　　\*　　\*

---

**4.** Section 1408(c)(1) provides:

Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods begin-

ning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

(F) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired or retainer pay is being *made pursuant to a court order under this section.* (Emphasis added)

There is no evidence that the defendant is providing an annuity to a spouse or former spouse "pursuant to a court order under this section." Defendant's payments, therefore, do not qualify under Section 1408(a)(4). Defendant's point of error is overruled.

 Finally, defendant urges that the trial court did not have the authority to award attorney's fees to plaintiff. We agree.

We follow *Etzel v. United States Dept. of Air Force,* 620 S.W.2d 853, 855 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) where the court, when faced with the same issue, stated:

> Upon examination of the record, we find in this case there existed no right for the recovery of attorney's fees at the enforcement proceeding as related to the delinquent retirement benefits. There is no indication that a contract existed for the payment of attorney's fees nor do we find any pleadings reflecting a proper statutory claim authorizing an award of attorney's fees for the recovery of the retirement benefits.

Plaintiff's reliance on *Chess v. Chess,* 627 S.W.2d 513 (Tex.App.—Corpus Christi 1982, no writ) and *Peissel v. Peissel,* 620 S.W.2d 796 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) is misplaced. *Chess* and *Peissel* were each based on a "property settlement agreement." The authority to award attorney's fees came from the contract nature of the suits. See *McCray v. McCray,* 584 S.W.2d 279 (Tex.1979) (per curiam); TEX.REV.CIV.STAT.ANN. art.

2226 (Vernon Supp.1982–1983). The instant case does not involve a property settlement agreement.

Plaintiff also argues that she is entitled to attorney's fees under a new provision of the Family Code. See Act of June 17, 1983, ch. 424, sec. 2, 1983 Tex.Gen.Laws 2346, 2353 (to be codified at Tex.Family Code sec. 3.77).[5] Plaintiff cannot take advantage of this new provision because the trial was held 21 days before the provision became effective. See *Shwiff v. Priest,* 650 S.W.2d 894 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Villiers v. Republic Financial Services, Inc.,* 602 S.W.2d 566 (Tex. Civ.App.—Texarkana 1980, writ ref'd n.r. e.). We hold that the trial court erred in awarding attorney's fees to plaintiff.

The part of the trial court's judgment awarding attorney's fees is reversed and rendered. In all other respects, the judgment of the trial court is affirmed.

---

5. The new Section 3.77 of the Texas Family Code provides:

In any proceeding to enforce a property division as provided by this subchapter, the court may award costs as in other civil cases. Reasonable attorney's fees may be taxed as costs in any proceeding under this subchapter, and may be ordered paid directly to the attorney, who may enforce the order for fees in his own name by any means available for the enforcement of a judgment for debt.